with that said, ladies and gentlemen, please all rise. Hear ye, hear ye. This Honorable Appellate Court for the Second District is now open. The Honorable Justice Robert D. McLaren presiding. Please be seated. Your Honors, our first case on this very special morning is number 2240457, the people of the State of Illinois, Plaintiff Appellee v. Pedro A. Vilchis, Defendant Appellant. Arguing for the Appellant, Annie Cebulski. Arguing for the Appellee, John G. Barrett. Thank you. Ms. Cebulski, you may proceed. Opposing counsel, justices, may it please the Court. This case can be summarized by two words, overcharged and overconvicted. No one here is disputing that Mr. Vilchis committed potentially prohibited acts when he fled from police on this ongoing car chase. However, the state threw the book at him and the trial court charged him or convicted him of three extra offenses for which the facts did not fit. Damage to, criminal damage to government supported property, attempt to murder, and the assault of Officer Vidrio. Do we have any issue that it's actually property owned by a government? Is there any issue concerning that question? There is not. The elements that are at issue here are damage, the actus reus, and knowingly, the mens rea. How about is there any issue concerning if we find that there is government supported property that has been damaged, is there any question in terms of the amount of the damage? If this Court reverses the conviction, then the restitution that is connected to that offense will go away, as that was part of the sentence. Can you speak up please? You're focusing on the criminal damage to government supported property as well as the attempt murder, time allowing. I will discuss the assault conviction as well. So the state failed to prove either damage or knowingly beyond a reasonable doubt for the criminal damage to government supported property. In this case, the criminal act that was prohibited is damages. Damages is an active verb that was not defined in the statute, but the plain meaning means that it is an active verb that the defendant must do to injure the property. You acknowledge that the defendant's actions in fleeing and eluding, that is what resulted in the use of the pit remover, correct? Absolutely. If he was not within the chain of events, we wouldn't be here right now. However, in criminal law, when there is an element of proximate causation- I know that. I want to ask another question though. Yes. Did you consider the application in section 5-2A, accountability for the damage that was caused, that he's accountable for the actions of the police officers who were forced to use these maneuvers when the defendant knew, especially after the first pit maneuver, he must have known that these maneuvers would be used again. And section 5-2A, accountability provides that a person having a mental state described by the statute defining the offense and he or she causes another form to conduct and that other person, in fact or by reason of legal incapacity, lacks such a mental state. Why would he not be accountable under section 5-2A? And which is what the judge found. Judge Clement found that he was responsible, that he caused this to occur. While the trial court found that he was a cause of the damage, it also found that the officers were the act that inflicted the harm on the cars. In this case, the accountability theory would not apply because the officers had the mental state that was required for the underlying act in which they knew that taking the act of driving into a car would cause the damage. Right. But you're suggesting that the defendant can't be held responsible for that? I'm suggesting under this statute, he could not be held responsible for the, under these facts, for the criminal damage to government-supported property. However, he was also convicted of fleeing and eluding on count 10 and 11, which included the language when he was fleeing and eluding, caused property damage over $300. We did not challenge that conviction as the facts were not so unreasonable to not support that offense. However, in this case, because the statute specifically and plainly has damage as the actual prohibited act, it would be unreasonable to find someone who did not commit that act guilty. Again, why is that? When, you know, historically, people who encourage criminal behavior and have the mental state, they can be held responsible. Under an accountability theory, that was not pursued by the state? We can affirm for any basis supported by the record and the trial court, the presumption is the trial court is aware of the accountability statute and that the state does not have to charge accountability in the indictment. It can be charged as a principle. In this case, because the damage resulted from the officers driving into the car, there was no criminal act because the actual act of them damaging the cars through a pit maneuver was with government consent. What I'm suggesting here is I agree with what you're saying, but the relationship between the defendant's conduct and his knowledge is attributable to what took place. He is the person who's responsible for the damage ultimately. And the restitution, you're not contesting the restitution, correct? We are contesting the restitution in that we believe that this conviction should be reversed and the restitution was connected. While the restitution would be awarded, the court didn't specify which particular crime the restitution was ordered under. Restitution was ordered because the damage that was caused to the police vehicles was ultimately a result of the episode that the defendant created, including fleeing and eluding. The other basis for challenging the restitution is that generally a government agency is not a victim within the meaning of the restitution statutes in civil law. And in the briefing, we talked more about why that would be the case. Counsel, referring back to the late 60s when I was in law school, there was a case called Paul's Graft v. Long Island Railroad. And relative to what Justice Burkett was referring to, isn't it reasonably foreseeable that a pit maneuver would result in damage not only to your client's vehicle but also to the police? And therefore, under Paul's Graft, Justice Burkett is correct insofar as liability is concerned? If this was a civil case, there would be a lot of the proximate cause and whether or not, how close within the sphere of, under Paul's Graft, it would be proximate causation and it would be a but-for cause. However, in criminal law, proximate causation is an element that the state needs to prove beyond a reasonable doubt. To talk about foreseeability puts this case outside of the statute that was specifically written by the legislature to capture the act of damages, the active verb that the defendant damages or harms or injures government-supported property. To talk about foreseeability is to ignore the plain language where if the legislature wanted to capture proximate causes, they would have included that language. If your client had stopped at any time during this, it's called a chase throughout most of the documents, there would have been no damage as we're seeing here today, if he had stopped. He chose not to stop. And in choosing not to stop, isn't he assuming certain responsibilities for what occurs as a result of that choice he has made, notwithstanding anything that the police officers are doing? He's made a choice to keep going when he's been told, not once, not twice, but by several cars, to stop. We're not here to contest whether or not he acted responsibly. May I finish? Pardon? Oh, was that not? Is the time up already? Somebody else is filming. Go ahead and ask your question. We're not here to contest that he should not have listened to officers. What we're here contesting is whether or not the offense of criminal damage to government-supported property, with that active verb damages, is the correct offense. The correct offense in this case was the fleeing and eluding, which causes property damage in excess of 300. Because he did not stop, that makes him a foreseeable, he's a proximate cause, but he is not the direct cause because his act of driving further away from the officers did not inflict the damage. What inflicted the damage was the officers speeding up then to crash their cars into his. While he was definitely part of the chain of events that led to that, and civil liability, again, we might be thinking about something different here, that's just not the correct offense based on the plain meaning of the statute. Can I ask a question? I know you want to probably talk about the attempt murder conviction, but let me ask you this. Do you know what the penalty for attempt first-degree murder or attempt murder is involving a peace officer? The range of penalties? The range of penalties? Right. Not offhand, but he did receive nine years for this particularly. No. The range of penalties is 20 to 80 years in the Department of Corrections. Was your client ever informed of that range? I would have to look back at the record. For example, if the state could bring a mandamus action against the trial court to impose at least the minimum sentence of 20 years, so it's 20 to 80, and just in terms of fairness to your client, shouldn't he know what he's facing? Should the state ever decide? Again, hypothetically, say we affirm the conviction. Shouldn't your client know it's 20 to 80 years? If this court reverses on the basis of lack of specific intent for attempt murder, it would be in a posit to then find specific intent for an aggravated offense, and to bring another charge for that after appealing and winning a reversal, that would appear to be punishing someone for appealing, especially when a key element of that would have been found to not be supported by the evidence. We'd get into a double-decker. I'm not suggesting that. Under the case law in Illinois, a person is responsible for or it's presumed that a person is aware of the natural and probable consequences of his or her conduct. Would you agree? If the circumstances in the specific case show knowledge, then there can be an inference of knowledge. During closing argument, the defense attorney argued and provided a scenario to the trial court, Mr. Dixon. He argued, he said, with respect to the defendant's maneuver and driving into the lane directly at Officer Knudson, he argued that that is not an indication of intent to kill. He said it would be an intent to commit suicide because there's obviously not somebody who's going to be surviving a crash like that in a car, in that car. It would also be an intent to kill his friend who he's in the car with. You would have to believe all those things to believe the state's case. Is that explanation of a possible scenario or an inference unreasonable? And that was the defendant's own take on the case. The defense pointed out other inferences that would show that he did not have specific intent to kill an officer. In this case, while that was closing argument and therefore not evidence, what the evidence shows is the circumstances do not show specific intent. While alone driving at an officer, may I finish my? You may finish. The circumstances in this case show that a finding of specific intent would be unreasonable because the act alone cannot be the sole finding of specific intent if there's circumstances that show that another specific intent is more reasonable. For example, this all happened within three seconds. The officer was not driving in the lane at the beginning of this interaction. The officer pulled off the shoulder of the road. My client was driving down in the wrong lane, and then within three seconds he pulled back onto the shoulder of the road. My client then drove through the area where the officer was. However, within these three seconds, the state then is asking this court to find that he formed that specific intent to kill. While you can form it instantaneously, in this case it's compounding inferences and speculation that he even perceived the officer when it's dark out. They're going fast on a country road, and he's being chased by multiple cars. There's no evidence that he saw the car. Additionally, he did not swerve toward the officer when the officer pulled off the shoulder onto the shoulder of the road. At that point, the officer was a sitting duck on the shoulder of the road. However, my client had actually two seconds before he reached the position of where the officer was, and he did not hit the car. He did not swerve. He did not attempt in any way to finish the job that the state wants you to speculate he wanted to do. Would you agree that intent to take life can be inferred from the character of the behavior of the defendant, and it doesn't have to be something that the defendant brooded over? I'm reading for People v. Coolidge, a 1963 Illinois Supreme Court case. Since every man is presumed to intend all the natural and probable consequences flowing from his own deliberate act, it follows that if he willfully doesn't act and to direct the natural tendency of which is to destroy another life, the natural and irresistible conclusion is that in the absence of qualifying facts is that the destruction of such other person's life was intended. In Coolidge, there was a struggle during an armed robbery. There was a knife produced that was not used to inflict mortal wounds. There was a cut on the victim's hand, but when the police arrived, he was being handcuffed and being held down by the store owner. So the event was over, but in that moment in time, those facts were enough evidence to convict him of an attempt. In that case, it sounds like the facts all supported a specific intent to kill. In this case, the inference that he made, or he had an intent to kill, would be that he specifically formed that intent to kill and abandoned it within a second. Because even though he went through the area where the officer was, to speculate that he would have kept going through that is a counterfactual because there was two seconds before he actually reached the officer's position. And we do not know, and there is no evidence on the record that would show that had the officer not taken evasive action first, that he wouldn't have gotten out of the way. You're asking us to re-weigh the evidence, essentially. Which we may not do. We are not asking you to re-weigh the evidence. We are asking you to look at the evidence and see that the circumstances do not show specific intent. And you may reverse if the evidence given by the state does not remove all reasonable doubt. Is it your contention that the only way intent to murder could be established is by the incurrence or the realization of some sort of contact between the two vehicles, whether or not it resulted in injury or death? No, that is not my position. And I believe the state cited Smith, which is a good counterexample of why those circumstances showed specific intent and our circumstances don't. In Smith, there was no contact with the officer, but the defendant in that case stopped his car, waited 15 seconds, and then slammed on the gas and drove directly through the officers, and the officer had to jump out of the way. In this case, it is different because my client's actions in this case were consistent with his overall reckless pattern of driving. He went into the wrong lane eight times with and without officers. And in this case, it's very strong circumstances that he did not swerve into the officer that was parked. Is it your contention that there had to be contact between the cars in order to establish beyond a reasonable doubt that he attempted a murder? You want me to repeat it? Yes, please. Is it your contention that there had to be contact between the two vehicles in order to establish beyond a reasonable doubt that the defendant attempted to murder the police officer? In conjunction with all the other circumstances surrounding the near collision, the lack of contact shows that there was a lack of specific intent in the truncated time frame, and in the fact that it would take just a slight movement when he was going as fast as he was to make contact. Instead, he drove forward. Any other questions? No, thank you. Thank you. Your time is up. You'll have an opportunity to make rebuttal. Mr. Barrett, you may proceed. Good morning, Your Honors. Good morning. May it please the Court. As a matter of housekeeping, I'll briefly address a scrivener's error in the people's brief that was correctly noted by a defendant in the reply brief. The people cited two cases, Decker and Kramer, that appear at the conclusion of our first argument that upon a subsequent revision, those references got left in, and I would just ask that Your Honors strike those two stray references. And then also, while we're up top here, I would like to kind of frame this in the context of the original counts, which there were 14 counts total in this case, 13 convictions. Those 13 convictions were merged into six convictions. So there were 13 guilty findings. The count two, attempted murder, was an acquittal. But all the other counts were guilty findings that were merged into six convictions. Could you either raise the microphone or speak up louder, please? I'm sorry, are you able to hear me? How tall are you? Can you all hear me back there? Okay. I'd like to address the count one attempted murder first before we jump into damages. Just so that I'm clear from the record and from everybody's argument, which is the count that the attempt murder was? Which officer, which circumstance? Count one was Officer Knutson. Okay. And the other count that was acquitted on was Officer Vidrio, that's count two. Okay, all right. Okay. Defendant's argument is that the facts in the whole scenario taken as a whole do not establish intent to kill. Notwithstanding that the defendant got into Officer Knutson's lane, he didn't maneuver his vehicle further to try to impact Officer Knutson's. But in order to find intent to commit first degree murder, does he have to make contact with the officer? Isn't forcing the officer off the road enough to create an intent? No, Your Honor, it wouldn't be. And what we have to do is we have to look at the evidence that was presented in the light most favorable to the state. And looking at the evidence, could any rational trier of fact found on this evidence that a conviction was warranted? And there clearly was. The trial court, this was a bench trial. So the trial court has more of an understanding of the law and application of the law to the facts than a jury. And here the trial court heard evidence from Officer Knutson and also had the dash cam video. And there's a couple of points I'd like to clarify in terms of the record and the sequence of events. This didn't occur in the first three seconds that Officer Knutson pulled back onto the road. Officer Knutson was driving for 20 to 30 seconds and his lights, when he was on the side of the road, were activated. His emergency lights are activated. He's clearly visible up ahead. He thought the defendant's headlights were on, but they weren't, correct? Right. So what he's seeing is the reflection off the defendant's... They flash on at the last moment. They kind of flash on if you watch the video as he's coming at him. They reflect off of the defendant's headlights. And you hear Knutson exclaim, I won't say the exclamation, but he's fearing for his life, clearly, in that moment. And you also hear an officer on the radio, over the radio, say, he just went head-on at the officer. He just went head-on at the officer. So you have not just the dash cam video, but another officer... Eyewitness. Eyewitness corroborating that. And the fact that the defendant merged over from the eastbound lane into the opposing lane, westbound, and stayed course through Knutson's position is strong evidence that he intended to take him out. We know, in that circumstance, he has maybe 20 to 23 cop cars behind him attempting to stop him. And he's... This wasn't just, oh, I have one police officer behind me kind of situation. He's a swarm behind him, and he has officers in front of him. Everything's closing in. We know the defendant is desperate. He's willing to do anything to not be caught. And to talk about desperation, defense counsel provided a scenario of suicide by cop in his closing argument. Was that explanation of the defendant's conduct unreasonable, or was it a reasonable inference from all the evidence that he may have been thinking about taking his own life and taking a cop out with him? Your Honor, I would say to that that if he intended to take the officer out and escape the consequences of his actions, that's attempted murder of the officer. And had they crashed and collided and both of them died, well, I think that would be good evidence that that's exactly what he was intending to do. And fortunately, that wasn't the outcome here. And the trial court found that this defendant intended to turn his car into a guided missile aimed directly at the officer's vehicle, and that was reasonable based on this evidence. Now, I also have a lot to cover in terms of the criminal damages, so if you have any other questions about the attempted murder, we can go over that. But I would like to focus our attention on criminal damages. Does the presumption that a person intends the natural and probable consequences of his actions apply here? Yes, it does. Yes, it does, Your Honor. The defense argues that there's other circumstances that you can draw from all of the evidence that shows that his only intent was to escape. The primary argument the defendant is making is in the criminal damage to property statute, proximate cause isn't expressly used in the statute. The term proximate cause doesn't appear. And my response to that is, and there's a criticism that the two cases relied on by the people, one of them barred for aggravated fleeing of an officer and then the felony murder statutes, where you link the underlying base offense to the result, whether it be a death caused in the commission of forcible felony or in the aggravated resisting case, the bar case, proximate cause is used as an aggravating factor. The base offense, when it refers to the act of obstructing, it's just obstructs, obstructs. But then what we do is there's a bridging of that to the aggravation. It's a class A misdemeanor that's aggravated to a class four felony by an injury proximately caused by the initial action. So by focusing on the initial action, that actually reinforces that in this case, the criminal damage statute is designed in precisely that way. If we look at it, whether a person damages any government supported property, damages, yes, it's a verb. To damage is to cause damage. Causation is built into that. So just by the plain language of the statute, principles of causation, including foreseeability and proximate cause, are built into that language by the plain terms of the statute, including the cases cited by the people. Is it more likely than not that when a pit and maneuver is exercised, that there'll be damage to the two vehicles and possibly telephone poles and traffic signs alongside the road? Yes, Your Honor. And in a case like this where the defendant has approached speeds of over 100 miles an hour, barreling through residential areas and endangering the public, all the more reason that these officers would use any means necessary, including force, with their vehicles to immobilize the defendant. And that's exactly what they did. Was it foreseeable they would do that? Absolutely, yes. And so turning to the criminal damage statute, like I mentioned, the damages, the action, the verb, contains that proximate causation. Ordinary causation is reflected in the way the statute's written there. And if we look—I'm sorry, I'm trying to get organized here. I have a few sheets of paper. Does Paul's graph have any effect in this case? We have to look at the conduct of the defendant as foreseeably—is it foreseeable? My point is Paul's graph was a scenario about whether or not the transaction that occurred was reasonably foreseeable. And so I don't know if this is a reiteration of Justice Burkett's question in a different way, but is what went down reasonably foreseeable? The facts of those two cases—I believe that was a civil case, this is a criminal case— there are some distinguishing factors. But here it's entirely foreseeable that by speeding through residential areas in excess of 100 miles an hour that police officers are going to use force to immobilize your vehicle. It absolutely is. And when we look at the criminal damage counts—this was counts three and four— the restitution order, as referenced by the defense, that was an independent finding. That's a separate proceeding. And what your honors have to look at in terms of evidentiary standards for a criminal conviction versus the standard for finding restitution, which is a quasi-civil proceeding, they're two entirely different standards. And the restitution, as Justice Burkett pointed out earlier, was not tied to any one count. That total amount, $13,425 for the total vehicle that both parties stipulated to. The defense stipulated to that amount as the total value of the vehicle. That's supported by the other criminal conduct that the defendant was convicted on, including the aggravated fleeing and eluding that had the damages component, over $300. The stipulation to the value doesn't necessarily constitute a stipulation to liability, does it? It confirms that that value corresponds to the amount of damage, and then we know that the defendant was convicted of the criminal damage count. So there was a finding that he was responsible, that his conduct would have reasonably foreseeably resulted in those pit maneuvers. And the restitution amount is supported independently by the fleeing and eluding, the aggravated fleeing and eluding counts. Can you discuss the defendant's reliance on Velez, restitution for the pants in that case? Right. In Velez, that case is starkly contrasted to what you see here because that case dealt with routine investigatory costs. They paid an investigator what would be gathering information about a suspect or a crime. These are normal, kind of in the course of business expenses. And the court ordered the payment to the police officer himself, not the department that issued the pants, right? Right, exactly. And here, the restitution was ordered to the department, to the agency. Yes. And when you look at the push bar in the front of an officer's vehicle, we don't swap those out like pens or legal pads. We don't anticipate that an officer's squad car is going to be totaled as just ordinary business. Oh, that's just the ordinary course of business. The defendant also argues that, to your point, it's not a common usage, and that goes to his lack of knowledge about the pit maneuver. Is the pit maneuver commonly, is it common knowledge that police use it? Well, that question was put to rest. The second pit maneuver was used on the defendant. And then there was a subsequent one, and then a third one that finally disabled his vehicle. So the defendant was absolutely unnoticed that force was going to be used. And, you know, there was no question the defendant continued to evade even after that maneuver was used the first time. He regained control of the vehicle and then continued on. I think you've committed an anthem to the extent that you've presumed that the fact that these pit maneuvers were done more than once, pardon me, automatically results in the conclusion that what was done previously must be appropriate, legal, and correct. And so would you elucidate or at least go a little bit further in finishing off your syllogism? Your syllogism is that he has knowledge that this is wrongful based upon the fact that the police officer attempted three times. Correct. You're presuming that what they did the first two times was legal and appropriate, such that he was placed on notice that if he resisted or didn't stop, that he was in the wrong. So my question to you is, please rationalize how he's supposed to know that it's wrongful for him to continue after the pit maneuvers were attempted. Well, any defendant who is willing to continue to disregard police efforts to pull over or stop and that are escalating beyond that to the point where the defendant is speeding at 100 miles an hour, endangering public safety, there are clear risks that the defendant is willing to take. He's willing to go far beyond the speed limit to evade capture, even if it means endangering. Counsel, are you saying that's reckless driving, not driving with knowledge that there's going to be this particular result? In certain instances, yes, there was recklessness. But there was also calculation when it came to the vehicle being used as a weapon, a deadly weapon toward Officer Knutson's patrol car. In that instance, and if you examine those 30 seconds of video, it's very clear what happens there. And the defendant, you know, obviously it would be reasonable for the trial court to conclude that this is a defendant who feels trapped. There's no way out. I'm going to take myself out in a police car. You know, I don't want to be apprehended at any cost. So I'm just going to barrel into him head-on, and that's exactly what he did. In your brief, you cite People v. Smith to support your argument. But in Smith, the officer was standing on a sidewalk, and the defendant drove up onto the sidewalk, correct? Correct. How is that – isn't that factually different in this scenario here? Here, you have a very similar circumstance in that the car was aimed directly at the officer. Here, there was a deliberate attempt to move the car from the eastbound lane to the westbound lane, to lock on. He locked onto him, and then he continued on without veering away. Now, the defendant— Are you familiar with People v. Mullind, M-E-L-I-N-D? It's a state trooper who was killed on Route 53. The defendant was involved in a police chase and drove directly at the officer, closed his eyes before he got to the officer, hoping that the officer would just jump out of the way. And the officer didn't jump out of the way. He was killed. In Mullind, though, the state did not charge intent to kill. The state charged knowledge. But wouldn't those facts also support an intent to kill charge? They could, and I would have to look more closely at that case, Your Honor. That's People v. David Mullind, M-E-L-I-N-D. I'll have to look that case up and examine the facts a little more closely. Mullind is at 179 Gillap Third, 836, 1989. He was found guilty of first-degree murder for striking and killing a state trooper during a high-speed chase. I have one question. Do I have time for one final thought before— Well, I have a question, and maybe it will cover your one final thought.  You're focusing on the fact that there's a hundred-mile-an-hour speed that's being clocked, and certainly that would seem to be dangerous. But what about the concept that the supervising sergeant here says, take this car out. You have authority. We want this car stopped, or whatever the actual words were. Does that initiation of additional action by the police, the pit maneuver, does that mean it's now the police who've initiated the damage, or is the defendant still responsible? The defendant's still responsible because that's absolutely a foreseeable response by the police. The police had to ratchet up what they were willing to do to get this guy to stop, to get him off the road so that he's no longer a risk to the public, and they did that. Was that foreseeable? Yes, it was. So the speed is important in your analysis in this case. That would be part of it. And then just the continued fleeing, not stopping, not responding to any officer's attempt to pull him over. I asked the defense counsel the question about accountability. The state did not argue accountability. But Judge Clement, in finding the defendant guilty, clearly knew that the police gave the order to use any means necessary, but he still found the defendant guilty based upon the result that the defendant caused this conduct, or caused this result, correct? Correct. That's a sort of creative way of looking at it. Accountability is one way you could reason that there was a connection between the damage and the— And even though the police could not be charged, the defendant could be charged with that result. The defendant could be charged. One final thought. Is it okay if I just try to get this one out? I have a question, and then you can finish up. Is there any case that you're aware of that determines that a court can take judicial notice of the pit maneuver and the Paul Zografian type of propensity to foretell the future as to what might occur upon a pit maneuver, such that defendants should be charged with such knowledge? Well, I think this case is a good test case for your honors. This is probably the case that may decide that issue. This could be that case, your honors. Connecting the damages from the statute to defendant's knowledge of what happened and occurred is precisely what we're here to argue today. Setting some precedent in that regard. Defendant had mentioned that the defendant had not veered away at the last minute or veered into Officer Knutson's patrol car as Knutson veered off onto the side of the road that he didn't then continue to veer into. I think that is exactly defendant's own argument that we're compounding unnecessary details to extrapolate an idea that is much simpler than that. Attempted murder. I don't have to continue shooting you if I miss. If I shoot at you and I miss, I can be charged with attempted murder. If we require someone to hit the defendant or if we require me to continue firing, no one could ever be charged with attempt. Don't you think that there's a difference between driving a car and firing a gun? One isn't ipso facto lethal per se, but if you fire a gun in the general direction of someone, that usually constitutes what most people would deem to be an aggressive act that might result in damage or death. But in the context of attempt, Your Honor, you have to say in this circumstance, this being used as a deadly weapon, in these circumstances where he veered directly into the lane, locked on the officer and continued, that's very similar to someone pointing a gun at someone and just attempting to shoot the person. I would say identical. That's a deadly event. The fact that he didn't strike the officer or that I missed when I shot doesn't mean that we shouldn't find there was an attempt because he didn't continue veering. He didn't continue toward Officer Knudsen. In those final seconds, the defendant continued straight and we don't have to extrapolate anything more than that. The trial court's judgment on that count was reasonable based on this evidence. What you just said sounded like the police officer went north and the defendant veered north. Is that the facts in this case? Because if one goes north and someone veers north, it seems very plausible that intent would suggest that he was following. But if the police officer went north and he went east or west, wouldn't that indicate that he was either very slow in reacting or that he wasn't intending to follow up on his attempt? It also could theoretically mean, I guess, that he had abandoned his intent when the person decided to move away and he was going to continue on his own path. So those three alternatives, which one are we supposed to determine is most logical, most reasonable, and is best supported by the evidence? I would argue that neither. We're not going to reweigh any evidence, Your Honor. We're going to look at the trial court's finding based on the facts. Do the facts here support it? In the light most favorable to the state, when we examine the dash cam video, the officer's testimony, and you hear the other officer reacting, does that evidence reasonably support that the defendant attempted to murder Officer Knutson? Yes, it does. Counsel, do you understand the concept that if there are three alternative acts, that it reasonably can be concluded that there may be three different results? And if that's the case, then aren't we supposed to determine what the results might be and which is the most reasonable? Let me pose a question. Where there are multiple inferences that can fall from the same set of facts, all reasonable inferences must be drawn in favor of the state. Is that a correct principle of law? That's a correct principle of law. In this instance, the inferences are supposed to be with the prevailing party. Any other questions? No, thank you. Thank you. Very interesting. Ms. Cebulski, you may proceed. Responding to opposing counsel's points, the Officer Knutson did drive for about 30 seconds before the almost collision. However, during that time period, he drove, pulled off the road to set up spike strips, pulled back onto the road, and then pulled off again. The three seconds that he was in the lane where there was a potential crash was that second time period where he had pulled back off of the shoulder. So there was only three seconds before the defendant approached. How does that affect our analysis? It affects the analysis. The trial court's finding and the inferences drawn by the trial court, we must favor those findings. All reasonable inferences must be drawn in favor of the state. And throughout the argument, essentially you're asking us to reweigh the evidence. Why is the trial court's finding irrational or unbelievable? The trial court's finding was unreasonable because throughout the... No reasonable juror, no reasonable fact finder could have found the defendant guilty of first-degree murder of attempt for first-degree murder under this scenario. That's your position. It is. All right, but if the immediate preceding action that the cars are now going at each other or in almost a collision course, if the officer takes an evasive maneuver to save his own life, we're not supposed to consider that? It's that your client is not still... Your client hasn't caused that particular evasive action but first intended to keep a path that would cause serious harm to one or both of them? Maybe death? That's a circumstance that can be considered. However, opposing counsel has mentioned a couple times that it was like a missile. When a missile locks in, it follows its target. When you shoot a gun, you lose control of the bullet the moment it leaves the barrel. In this case, Mr. Vilches had control over the vehicle the entire time. Therefore, if his intention in those three seconds was to hit the officer, he would have hit the car. The trial court found that had Deputy Knutson not taken evasive action, he'd be dead, that the defendant continued on to drive in that lane for a period of time after Deputy Knutson pulled off, and then he got back in and continued with the chase. And again, I want to ask you this. Isn't it a fact that if a person believes that certain results will follow or that we can infer that a person who commits a particular act, that that conduct is sufficient to show specific intent for the result that would ordinarily follow? And here the result that would have followed was the death of Knutson and probably the defendant and his passenger because they were going. I think one of the radar guns picked up 92 miles an hour during that stretch, right? There was variable speeds that were very high. But we know that the radar at one point in time said 92 miles an hour. So why is the trial judge out in left field? He said these facts support the inference that the defendant intended to kill, which is consistent with the video. The trial court inserted a reckless mindset where had the collision happened, that would be murder. However, because the collision did not happen, intent to run him off the road, intent to inflict great bodily harm, all of those intents do not satisfy specific intent. What about Smith, people versus Smith? The case was reversed on other grounds, but the trial court found that the evidence was sufficient to convict. In that case, the circumstances showed clear specific intent. In this case, the inference, the only inference from the evidence presented that would support the state is that he formed the intent to kill and abandoned it instantaneously. The rest of the evidence show an intent to flee, and all of the circumstances show that he would, there is just no evidence showing that he even knew that the officer was there. How about the expletive that Knutson said right as that car passed, how shocking it was to him? He barely missed getting hit. That expletive was relevant to the assault charge, which Mr. Vilches was convicted of, but that expletive isn't necessarily evidence of my client's internal mindset. And I see my time is up, but may I address the accountability theory briefly? Although this court may affirm for any reason on the record, in this case, the accountability theory was not raised in the briefs. It was forfeited, and it wasn't even raised by the state at trial level. To find my client guilty under accountability theory is essentially finding him guilty of a crime that he was not able to defend against, because accountability requires different defenses. It requires an ability to respond to that theory and not to apply an expletive. It also requires knowledge. But my question stemmed from the trial court's ruling itself. The trial court did not articulate it in terms of the statute, but he clearly found that the defendant was responsible or accountable for the damage that was caused. While the trial court found that he was responsible, that finding would not be counter to this court finding that the statute requires that the defendant, that my client, take direct act. That he did the damage himself. Exactly. And that's your position? That is my position. Okay. Thank you. Thank you. Mr. Clerk, you may proceed.